UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

ELIZABETH FILARDO PAMPAS                    CASE NO.: 06-10936
    DEBTOR                                  CHAPTER 7

## MEMORANDUM OPINION

    The United States Trustee has moved to dismiss the debtor's petition pursuant to 11 U.S.C. §707(b).  This motion presents two issues: 1) the propriety of claiming an unborn child as an additional household member on the means test form, Form B22A, and 2) the debtor's ability to claim the $471 transportation ownership cost for her unencumbered vehicle.

    This memorandum opinion sets forth the court's reasons for granting the U.S. Trustee's motion to dismiss.

## FACTS

    Elizabeth Filardo Pampas ("Pampas") filed chapter 7 on October 27, 2006.  She filed her original Chapter 7 Statement of Current Monthly Income and Means Test Calculation[1] on November 2, 2006.  Pampas filed an amended means test form[2] on November 27, 2006 showing that the annualized income of the debtor and her non-filing husband is $51,456.84,[3] which equals current monthly income of $4,288.07.

    Pampas and the U.S. Trustee stipulated that her nonpriority unsecured debt totals $68,616.02.[4]  The parties also stipulated that Pampas's debt is primarily consumer debt.[5]

---

[1]   Official Form B22A (P-8).

[2]   Debtor's amended means test form (P-14).

[3]   Stipulation at line 10 (P.26), citing line 13 of the debtor's amended means test form.

[4]   Stipulation at line 5.

The debtor's original means test reflected a household size of two, comprising the debtor and her husband.[6] After the debtor learned that she was pregnant with her first child, she amended the means test to include her unborn child as a member.[7] The U.S. Trustee contends that the debtor cannot claim her unborn child as a household member.

Pampas and her husband own only one vehicle, a 1999 Ford Explorer with 104,146 miles on the odometer.[8] Pampas claimed the $471 transportation ownership expense for the unencumbered Explorer on both her original and amended means tests.[9] As a result, Pampas calculates her section 707(b) expenses as $178.68 more than her current monthly income.[10] Accordingly, she contends that her case is not presumed abusive under 11 U.S.C. §707(b)(2). The U.S. Trustee disputes Pampas's right to claim the $471 transportation ownership expense, and argues that without it, Pampas's case is presumed abusive because her current monthly income exceeds her 707(b) expenses by $342.83.[11]

---

[5]  Stipulation at line 5.

[6]  Line 14b on Pampas's original means test form.

[7]  Line 14b on Pampas's amended means test form.  Pampas testified that a test revealed that her unborn child is at risk for Down syndrome.  The debtor said she travels from her Amite home to Baton Rouge every three to four weeks for additional medical care as a result of the screening.

[8]  Stipulation at line 6.

[9]  Line 23a on Pampas's original means test form; Line 23a on Pampas's amended means test form.

[10]  *See* debtor's amended means test form at line 50

[11]  *See* means test form completed by U.S. Trustee (P-25) at line 50.

## LAW AND ANALYSIS

**I. PAMPAS'S CURRENT MONTHLY INCOME EXCEEDS THE 2006 LOUISIANA MEDIAN FAMILY INCOME REGARDLESS OF WHETHER HER UNBORN CHILD IS COUNTED.**

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")[12] substantially modified Bankruptcy Code section 707, which governs dismissal of chapter 7 cases. Pursuant to section 707(b)(1), after notice and a hearing a court "may dismiss a case filed by an individual debtor under [chapter 7] whose debts are primarily consumer debts … if it finds that the granting of relief would be an abuse of the provisions of [chapter 7]."

Section 707(b)(2) applies the "means test" to determine whether a debtor's chapter 7 case is presumed to be abusive. The first step in the means test is to determine whether the debtor qualifies for section 707(b)(7)'s "safe harbor" protection. That provision bars dismissal of a chapter 7 case if the combined current monthly income of the debtor and the debtor's spouse, multiplied by 12, is equal to or less than the forum state's median family income for a family the size of the debtor's household in the year the debtor filed bankruptcy.

The parties stipulated that the debtor and her husband's current monthly income multiplied by twelve equals $51,456.84.[13] In Louisiana, the 2006 median family income for a household of two is $39,296.[14] For a household of three, Louisiana's 2006 median family income is $47,075.[15] Accordingly, Pampas would not qualify for the safe harbor even if her household comprised three members.

---

[12] Pub.L. No. 109-8, 119 Stat. 23 (2005).

[13] Stipulation at Line 10.

[14] U.S. Trustee Program, *Census Bureau Median Family Income by Family Size (Cases Filed Between October 1, 2006, and January 31, 2007, Inclusive)*, http://www.usdoj.gov/ust/eo/bapcpa/20061001/bci_data/median_income_table.htm (last visited May 11, 2007).

[15] *Id.*

3

However, the inquiry regarding family does not end there. If a debtor does not qualify for the safe harbor, the court still must determine whether the debtor's case is abusive. 11 U.S.C. §707(b)(1). A case is presumed abusive if "the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or… $10,000."[16] 11 U.S.C. §707(b)(2)(A)(i).

From her current monthly income,[17] 11 U.S.C. §707(b)(2)(A)(ii) allows the debtor to subtract her monthly expenses, which include the *applicable* monthly expenses specified under the IRS's National and Local Standards and the *actual* monthly expenses for the categories specified as the IRS's Other Necessary Expenses. The National and Local Standards are part of the IRS's administrative scheme for determining a taxpayer's ability to pay a delinquent tax liability. *In re Slusher*, 2007 WL 118009, *12 (Bankr. D. Nev.). The National Standards establish allowable amounts for five categories of necessary expenses: food, housekeeping

---

[16] In other words, the debtor's case is presumed abusive if the debtor's currently monthly income reduced by the amounts determined under section 707(b)(2)(A)(ii)-(iv) is not less than 1/240th of the debtor's nonpriority unsecured claims, or $100, whichever is greater; or $166.67.

[17] Section 101(10A) provides that *current monthly income*:

> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on –
>
> > (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
> >
> > (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
>
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

supplies, apparel and services, personal care products and services, and miscellaneous expenses. The amount deductible for each expense varies depending on a debtor's gross income and family size.[18] The Local Standards establish amounts for two necessary expenses: transportation and housing. The Local Standards also vary, and are based on the place a debtor resides, the size of the debtor's family,[19] and the number of vehicles the debtor owns.[20]

Thus, if Pampas's household size is two, then the applicable National Standard expense deduction for food, clothing, household supplies, personal care, and miscellaneous is $904.[21] However, if three people are in the debtor's household, then the deduction is $1,017.[22] Family size also bears on Pampas's expenses under Local Standards.[23] Accordingly, to apply the means test the court still must determine Pampas's household size.

"The U.S. Trustee, or any other party in interest, may not rely on events which have not yet occurred, or which it believes may occur, as of the date of the filing of the [motion to dismiss under section 707(b)]." *In re Singletary*, 354 B.R. 455, 465 (Bankr. S.D. Tex. 2006). "If the

---

[18] *See* U.S. Trustee Program, *IRS National Standards for Allowable Living Expenses*, http://www.usdoj.gov/ust/eo/bapcpa/20061001/bci_data/national_expense_standards.htm (last visited May 11, 2007).

[19] The housing component of the IRS's Local Standards includes expenses for mortgage/rent and utilities. *See* U.S. Trustee Program, *Louisiana Local Housing and Utilities Standards*, http://www.usdoj.gov/ust/eo/bapcpa/20061001/bci_data/housing_charts/irs_housing_charts_LA.htm (last visited May 11, 2007).

[20] U.S. Trustee Program, *IRS Local Transportation Expense Standards – South Census Region*, http://www.usdoj.gov/ust/eo/bapcpa/20061001/bci_data/IRS_Trans_Exp_Stds_SO.htm (last visited May 11, 2007). Although the transportation ownership cost is part of the Local Standards, it is not adjusted based on the taxpayer's place of residence. In contrast, the IRS's Local Standards do adjust operating and public transportation costs based upon the taxpayer's locality.

[21] *See* footnote 18, above.

[22] *See* footnote 18, above.

[23] A household of one or two from Tangipahoa Parish, Louisiana is entitled to a $313 deduction for utilities and a $528 deduction for mortgage/rent. *See* footnote 19, above. These deductions are $368 and $621, respectively, if the household size is three. *Id.*

5

[debtor wants] to present facts that do not appear in the means test, they must argue these facts as special circumstances under § 707(b)(2)(B)." *Singletary*, 354 B.R. at 465. Pampas may not count her unborn child as a member of her household for purposes of the mean test because, as of the date the U.S. Trustee moved to dismiss her case, her child had not been born.

Accordingly, Pampas may claim expenses under the National and Local Standards only for a two member household.[24]

## II. PAMPAS IS NOT ENTITLED TO CLAIM THE TRANSPORTATION OWNERSHIP COST.

The second issue bearing on the presumption of abuse is whether the debtor may claim the vehicle ownership expense for her unencumbered Ford Explorer.

Section 707(b)(2)(A)(ii) entitles the debtor to subtract from her current monthly income expenses that include the *applicable* monthly expenses specified in the IRS's National and Local Standards, as well as the *actual* monthly expenses falling into the categories the IRS has specified as Other Necessary Expenses. The transportation component of the IRS's Local Standard includes expenses for vehicle ownership and operation. The transportation ownership cost is based on the number of cars a taxpayer finances or leases, and is set at $471 for the first vehicle.[25] The transportation operating cost is fixed at $260 if the taxpayer owns one car, whether that car is financed or leased. In addition, if the taxpayer's vehicle is more than six years old or has mileage of 75,000 miles or more, a taxpayer is allowed an additional operating cost of $200, whether or not he owns the vehicle outright.[26]

---

[24] This means that the U.S. Trustee's version of Pampas's means test is correct because this version was calculated with a household size of two.

[25] *See* footnote 20, above.

[26] Internal Revenue Service, *Internal Revenue Manual – 5.8.5.5.2*, http://www.irs.gov/irm/part5/ch08s05.html#d0e75074 (last visited April 27, 2007). Pampas's original and amended means tests did not include the additional $200 operating expense on line 22. The U.S. Trustee's version of Pampas's means test included this expense on line 22, and the evidence established that Pampas is entitled to the

6

Pampas's ability to claim the transportation ownership cost depends on whether the term *applicable* in section 707(b)(2)(A)(ii) refers to the number of vehicles a debtor *owns*, as Pampas suggests, or only to the number of vehicles that the debtor *finances or leases*, as the U.S. Trustee argues. Unfortunately, the bankruptcy courts that have considered the issue do not agree on the meaning of *applicable* in section 707(b)(2).

### A.  The *Slusher* Line of Cases

Several reported opinions considering this issue have concluded that a debtor may claim a transportation ownership cost only for vehicles he finances or leases. *See Slusher*, 2007 WL 118009; *In re Hardacre,* 338 B.R. 718 (Bankr. N.D. Tex. 2006); *In re McGuire,* 342 B.R. 608 (Bankr. W.D. Mo. 2006) (chapter 13 debtor not entitled to deduct cost for vehicle owned free and clear of any liens); *In re Barraza,* 346 B.R. 724, 727-29 (Bankr. N.D. Tex. 2006) (chapter 7 debtor not entitled to take standard ownership cost for 18-year old pickup truck that was not financed or leased). These courts reason that because Congress incorporated the IRS standards into the Bankruptcy Code, bankruptcy courts must apply the standards as the IRS would have. *See e.g.*, *Slusher*, 2007 WL 118009 at *14 ("Congress' decision to use the IRS standards within the Bankruptcy Code strongly suggests that courts should look to how the IRS determined those standards; that is, as to how the IRS would have applied them in similar circumstances.")

This approach requires analysis of a taxpayer's financial condition using procedures set forth in the Internal Revenue Manual ("IRM") and the IRS's Collection Financial Standards ("CFS"), which state that "[i]f a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense. If a taxpayer has no car payment only the operating cost portion of the transportation standard is used to figure the

---

additional $200 operating expense.  *See* U.S. Trustee's Reply Brief at page 8.

7

allowable transportation expense."[27]

### B. The *Fowler* Line of Cases

Other courts have concluded that a debtor may claim the transportation ownership cost even if the debtor's vehicle is unencumbered. *See, e.g.*, *In re Fowler*, 349 B.R. 414 (Bankr. D. Del. 2006) and *In re Wilson*, 356 B.R. 114 (Bankr. D. Del. 2006). These courts emphasize the plain language of 11 U.S.C. §707(b)(2)(A)(ii)[28] in concluding that Congress used the words *actual* in connection with Other Necessary Expenses and *applicable* with respect to the National and Local Standards because it intended two different things. *Fowler,* 349 B.R. at 418, citing *Duncan v. Walker*, 533 U.S. 167, 173 (2001) ("where Congress includes particular language in one section of an act but omits it in another section of the same legislation, Congress generally is presumed to have acted intentionally and purposely in disparate inclusion or exclusion.").

According to these courts, the term *actual* requires that the debtor actually incurred an expense, whereas *applicable* does not require a debtor to have incurred the expense. *See e.g. In re Farrar-Johnson,* 353 B.R. 224, 230-31 (Bankr. N.D. Ill. 2006) (concluding that debtors with no actual housing expense could take the "applicable" housing expense deduction under the Local Standards). Moreover, these courts did not factor the IRM or CFS procedures in their interpretation. Thus, under the *Fowler* line of cases, *applicable* simply refers to the number of vehicles a debtor owns, regardless of whether the debtor incurs an expense for the vehicle.

---

[27] Internal Revenue Service, *Internal Revenue Manual – 5.15.1.7*, http://www.irs.gov/irm/part5/ch15s01.html#d0e182366 (last visited May 11, 2007); Internal Revenue Service, *Collection Financial Standards*, http://www.irs.gov/individuals/article/0,,id=96543,00.html (last visited May 11, 2007).

[28] Section 707(b)(2)(A)(ii)(I) provides that "[t]he debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service…." (*emphasis added*).

### C. This Court Adopts the *Slusher* View

Judge Markell's opinion in *Slusher* is persuasive. A debtor may claim the *actual* amount of Other Necessary Expenses. These expenses are theoretically without any limit, and include costs a debtor actually incurs. *Slusher*, 2007 WL 118009 at *14. In contrast, a debtor can deduct only the amounts specified by the IRS's National and Local Standards, regardless of whether the debtor spends more on the specified category of expense. *Id*. The *applicable* deduction is limited to a fixed amount. This construction of the statute recognizes that *actual* and *applicable* have different meanings: one is a limitless deduction within the specified categories of Other Necessary Expenses, and the other is a deduction limited to the amount and type specified by the IRS. *Id*. at *13. Had Congress intended to afford debtors the expense amounts specified in the National and Local Standards regardless of their ownership of vehicles, section 707(b)(2)(A)(ii)(I) would have read, "The debtor's monthly expenses shall be the monthly expense amounts specified under the National Standards and Local Standards…," rather than "The debtor's monthly expenses shall be *the debtor's applicable* monthly expense amounts specified under the National and Local Standards…." *Id*.

Finally, Congress referred to the IRS National and Local Standards in section 707(b)(2)(A). It would indeed be odd if Congress had incorporated the IRS's standards into the Bankruptcy Code, but not intended that courts interpreting those standards consider the way the authoring agency employed the standards. *Id*. To apply the standards properly courts should consider how the IRS defines the categories, applies the standards and calculates the expenses.[29]

The court adopts the reasoning of *Slusher*, and accordingly, Pampas cannot claim a $471

---

[29] This does not mean that the IRS's standards necessarily have been incorporated wholesale into the Bankruptcy Code, or that they control outcomes on other issues including chapter 13 cases, absent proof of Congress's intent that they do so. The court expressly declines to hold that it is bound to follow IRS procedures or interpretations in all cases where the Bankruptcy Code is silent on a relevant issue.

9

transportation ownership cost under the Local Standards for a vehicle on which she is not making loan or lease payments. As a consequence, Pampas's bankruptcy filing is presumed to be abusive.[30]

### III. Pampas has not Rebutted the Presumption of Abuse

Section 707(b)(2)(B)(i) allows a debtor to rebut a presumption of abuse only by demonstrating special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative. Whether special circumstances exist is a fact-specific determination. *In re Templeton*, 2007 WL 886010, *2 (W.D. Okla.), citing *In re Thompson,* 350 B.R. 770, 777 (Bankr. N.D. Ohio 2006); *In re Lenton*, 2006 WL 3850011 (Bankr. E.D. Pa.). Congress gave courts broad discretion to determine whether a particular set of facts constitutes special circumstances, *Templeton*, 2007 WL 886010 at *2, citing *In re Tranmer*, 2006 WL 3366452 (Bankr. D. Mont.); and the examples listed in section 707(b)(2)(B) are not exhaustive. *Templeton*, 2007 WL 886010 at *2, citing *Thompson*, 350 B.R. at 777.

To support a claim of special circumstances, the debtor must itemize each additional expense or adjustment of income, and provide documentation and a detailed explanation of the special circumstances that make those expenses or income adjustments necessary and reasonable. 11 U.S.C. § 707(b)(2)(B)(ii). Bankruptcy Code section 707(b)(2)(B)(iii) also requires the debtor to attest under oath to the accuracy of the information. Even if the debtor provides the required proof, the presumption of abuse is rebutted only if the income reduction or additional expenses reduce the debtor's deemed current monthly income to a level less than the amount that triggers the presumption. 11 U.S.C. §707(b)(2)(B)(iv).

---

[30] Pampas's current monthly income is $4,288.47. Her total §707(b)(2) deductions reflected on line 47 of the U.S. Trustee's version of her means test form, which does not include the $471 transportation ownership cost, equals $3945.24. Thus, her current monthly income is $342.83 more than her expenses. Pampas's case is presumed abusive because this difference when multiplied by 60 is greater than $10,000. 11 U.S.C. §707(b)(2)(A)(i).

10

Even if this court were to conclude that Pampas's pregnancy constitutes a special circumstance – a determination it declines to make on this record – Pampas has not offered proof to rebut the presumption.

Pampas has pointed to only one increased expense constituting a special circumstance resulting from her pregnancy: additional travel expenses for consultation with physicians in Baton Rouge. However, Pampas did not itemize the additional expenses, nor did she provide sufficient documentation of the expenses. The two Google maps[31] and an American Automobile Association Gasoline Price Chart attached to the debtor's post-trial brief were not admitted into evidence, and at this stage the court will not take judicial notice of any facts they purport to establish. *See* FED. R. EVID. 201(c) (courts have discretion to decline to take judicial notice, regardless of whether a party asks it to do so). Nor did Pampas provide any evidence regarding her vehicle's fuel consumption, or the frequency of her visits to her obstetrician in Hammond. Finally, her gasoline expense already is factored in the Local Standards vehicle operating costs.[32] As a result, the court cannot accurately determine the debtor's additional travel costs associated with the pregnancy.

Pampas also argues that her increased rent and propane charges constitute special circumstances. The IRS's Local Standards provide for housing and utility deductions based upon location and family size.[33] However, Pampas can deduct only the amounts specified in the IRS's

---

[31] The maps apparently were intended to prove the distance between the debtor's home, and Baton Rouge and Hammond. However, they do not establish the actual distance between the debtor's home and Women's Hospital in Baton Rouge and her obstetrician in Hammond, since they do not provide the distance between two specific addresses.

[32] Operating costs include: insurance, registration fees, normal maintenance, fuel, parking and tolls. *In re Ford*, 2006 WL 4458358, *2 (Bankr. N.D. Ohio), citing Internal Revenue Service, *Internal Revenue Manual – 5.15.1.9.*, http://www.irs.gov/irm/part5/ch15s01.html#d0e182486.

[33] *See* footnote 19, above.